## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

SA HOSPITALITY GROUP, LLC;

1000 MADISON AVENUE LLC;

ASTORIA CAKES LLC;

CAFÉ FOCACCIA, INC.;

REALTEK LLC;

SA MIDTOWN LLC;

BAILEY'S RESTAURANT LLC;

SA SPECIAL EVENTS, INC.;

SASE LLC;

EIGHTY THIRD AND FIRST LLC;

265 LAFAYETTE RISTORANTE LLC;

FELICE GOLD STREET LLC;

SA 61ST MANAGEMENT LLC;                    20 Civ. 3258 (GHW)

SA YORK AVE LLC;

SA THIRD AVE CAFÉ LLC;

SABF LLC,

FELICE CHAMBERS LLC; and

AND FELICE WATER STREET LLC, on behalf of
themselves and all others similarly situated,

                                        Plaintiffs,

                —*against*—

THE HARTFORD FINANCIAL GROUP, INC.;

HARTFORD FIRE INSURANCE COMPANY; and

SENTINEL INSURANCE COMPANY, LIMITED,

                                        Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## HARTFORD FIRE INSURANCE COMPANY'S MOTION TO DISMISS

STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

1114 Avenue of the Americas
New York, New York 10036
July 9, 2020                               (212) 506-3900

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................... 1

BACKGROUND FACTS .......................................................................................... 3

DISCUSSION ........................................................................................................... 5

    I.     Governing Standards .................................................................................. 5

          A.    Standard for a Motion to Dismiss ............................................... 5

          B.    Insurance Contracts Are Enforced as Written ............................ 6

    II.    SA Hospitality Has Not Alleged Direct Physical Loss ........................... 7

          A.    SA Hospitality's Closure Was Caused by the Pandemic,
               Not By Property Damage At Its Premises .................................. 7

          B.    SA Hospitality Relies on Easily Distinguishable Cases
               From Outside New York ............................................................ 11

    III.   SA Hospitality Has Not Alleged Facts to Trigger
          "Additional Coverage" Under the Civil Authority Clause ................... 12

    IV.   The Virus Exclusion Is an Independent Ground to Dismiss ................ 14

          A.    The Court Should Enforce the Unambiguous Virus Exclusion .............. 15

          B.    The Governmental Workforce Reduction Orders
               Do Not Take This Case Outside the Virus Exclusion .............................. 16

               1.    The Language of the Virus Exclusion Expressly
                    Contemplates that It Would Be Triggered in
                    Connection with the Civil Authority Clause ............................... 16

               2.    A Governmental Workforce Reduction Order
                      Is Not a Covered Cause of Loss .................................................. 17

                3.    The Broad Phrasing "Caused By or Resulting From"
                      Goes Beyond Efficient Proximate Cause ..................................... 21

                4.    The Virus Was In All Events the Efficient
                      Proximate Cause of SA Hospitality's Alleged Losses ................. 22

CONCLUSION ......................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Album Realty Corp. v. American Home Assurance*,
607 N.E.2d 804 (N.Y. 1992) ................................................................. 21, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 5

*Bird v. St. Paul Fire & Marine Insurance Co.*,
120 N.E. 86 (N.Y. 1918) ................................................................... 18, 23

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S. Ct. 1773 (2017) ............................................................................. 2

*Certain Underwriters at Lloyds of London v. Creagh*,
563 F. App'x 209 (3d Cir. 2014) ........................................................... 16

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ..................................................................... 6

*Cleary v. Automobile Insurance Co. of Hartford*,
35 N.Y.S.3d 238 (2d Dep't 2016) ......................................................... 15

*County of Columbia v. Continental Insurance Co.*,
634 N.E.2d 946 (N.Y. 1994) ................................................................. 20

*Dae Associates, LLC v. AXA Art Insurance Corp.*,
158 A.D.3d 493 (1st Dep't 2018) ............................................................. 6

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ................................................................................. 2

*Gregory Packaging, Inc. v. Travelers Property Casualty Co.*,
No. 2:12-cv-04418, 2014 WL 6675934 (D.N.J. Nov. 25, 2014) ........... 11

*Hero Enterprises B.V. v. Loretta Howard Gallery Inc.*,
20 F. Supp. 3d 421 (S.D.N.Y. 2014) ....................................................... 6

*Hit Factory, Inc. v. Royal Insurance Co. of America*,
02 Civ. 4068, 2005 WL 2125803 (S.D.N.Y. Aug. 26, 2005) ............... 17

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation*,
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ............................................................... 13

*Keyspan Gas East Corp. v Munich Reinsurance America, Inc.*,
    96 N.E.3d 209 (N.Y. 2019) ............................................................................ 7

*Lambi v. American Mutual Insurance Co.*,
    No. 4:11-cv-906, 2012 WL 2049915 (W.D. Mo. June 6, 2012),
    *aff'd*, 498 F. App'x 655 (8th Cir. 2013) ........................................................ 16

*Loretto-Utica Properties Corp. v. Douglas Co.*,
    630 N.Y.S.2d 917 (N.Y. Sup. Ct. 1995) ........................................................ 22

*Maroney v. New York Central Mutual Fire Insurance Co.*,
    839 N.E.2d 886 (N.Y. 2005) ......................................................................... 22

*McLean v. Continental Casualty Co.*,
    951 F. Supp. 494 (S.D.N.Y. 1997) ............................................................... 16

*Morgan Stanley Group Inc. v. New England Insurance Co.*,
    225 F.3d 270 (2d Cir. 2000) ........................................................................... 6

*Murray v. State Farm Fire and Casualty Co.*,
    509 S.E.2d 1 (W. Va. 1998) ......................................................................... 11

*Newman Myers Kreines Gross Harris, P.C. v. Great Northern Insurance Co.*,
    17 F. Supp. 3d 323 (S.D.N.Y. 2014) .............................................. 9, 10, 11, 12

*Pahuta v. Massey-Ferguson, Inc.*,
    170 F.3d 125 (2d Cir. 1999) ........................................................................... 9

*Paradies Shops, Inc. v. Hartford Fire Insurance Co.*,
    No. 1:03-cv-3154-JEC, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) ............ 14

*Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Insurance Co.*,
    472 F.3d 33 (2d Cir. 2006) ........................................................................... 23

*Prime Alliance Group, Ltd. v. Hartford Fire Insurance Co.*,
    No. 06-22535, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007) ............... 18, 19, 23

*Roundabout Theatre Co. v Continental Casualty Co.*,
    302 A.D.2d 1 (1st Dep't 2002) .............................................................. 8, 9, 11

*Seaboard Surety Co. v. Gillette Co.*,
    476 N.E.2d 272 (1984) ................................................................................... 6

*Sentinel Insurance Co., Ltd. v. Monarch Medical Spa, Inc.*,
    105 F. Supp. 3d 464 (E.D. Pa. 2015) ........................................................... 16

*Siegel v. Chubb Corp*,
    825 N.Y.S.2d 441 (1st Dep't 2006) .................................................................. 23

*Sirignano v. Chicago Insurance Co*.,
    192 F. Supp. 2d 199 (S.D.N.Y. 2002) .............................................................. 17

*Social Life Magazine, Inc. v. Sentinel Ins. Co.*,
    1:20-cv-03311-VEC, ECF No. 24-1 (S.D.N.Y. May 14, 2020) ........................ 8

*South Texas Medical Clinics, P.A. v. CNA Financial Corp.*,
    No. H-06-4041, 2008 WL 450012 (S.D. Tex. Feb. 15, 2008) .......................... 14

*Southern Hospitality, Inc. v. Zurich American Insurance Co.*,
    393 F.3d 1137 (10th Cir. 2004) ....................................................................... 13

*St. Paul Mercury Insurance Co. v. Magnolia Lady, Inc.*,
    No. 2:97-cv-153 BB, 1999 WL 33537191 (N.D. Miss. Nov. 4, 1999) ........................ 13

*Syufy Enterprises v. Home Insurance Co. of Indiana*,
    No. 94-0756 FMS, 1995 WL 129229 (N.D. Cal. Mar. 21, 1995) .................... 13

*United Air Lines, Inc. v. Insurance Co. of State of Pennsylvania*,
    439 F.3d 128 (2d Cir. 2006).............................................................................. 14

*Village of Sylvan Beach v. Travelers Indemnity Co.*,
    55 F.3d 114 (2d Cir. 1995)................................................................................. 6

*Wakefern Food Corp. v. Liberty Mutual Fire Insurance Co*.,
    968 A.2d 724 (N.J. Super. Ct. App. Div. 2009)............................................... 11

## RULES

Fed. R. Civ. P. 12 ............................................................................................ 5

Fed. R. Civ. P. 8 .............................................................................................. 5

## TREATISES

Allan D. Windt, Insurance Claims & Disputes (6th ed. 2020) .................................... 21

Steven Plitt, et al., Couch on Insurance (3d ed. 1995).......................................... 18, 21

## REGULATIONS

Executive Order, 9 NYCRR 8.202.6 (Mar. 18, 2020) .................................... 3

Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) .................................... 3, 22, 23

## INTRODUCTION

This case concerns a business interruption insurance claim arising from the COVID-19 pandemic. By this motion, defendant Hartford Fire Insurance Company ("Hartford Fire") seeks to dismiss the Complaint because the underlying policy covers only "direct physical loss" or "physical damage" to property—which is not alleged to have occurred—and because the policy expressly excludes coverage for viruses.

The plaintiffs are a group of companies in the restaurant business, SA Hospitality Group, LLC and 17 of its subsidiaries (collectively, "SA Hospitality"), that together have one property insurance policy. Coverage under the primary policy provisions at issue is triggered only where there is "direct physical loss of" or "physical damage to" property at SA Hospitality's premises that causes a suspension in operations.

SA Hospitality concedes that its restaurants were closed not because of any property damage at the premises but because of an external factor: governmental orders mandating that non-essential businesses reduce their in-person workforces, to limit the spread of COVID-19. Those orders have nothing to do with property damage and everything to do with keeping people apart. While SA Hospitality argues that it is "unable to use [its] property," binding precedent from the Appellate Division has squarely rejected the argument that "loss of use" amounts to direct physical loss. That court and others have found that there is no direct physical loss where a business is forced to close for reasons *external* to the premises and unrelated to property damage.

SA Hospitality also invokes a policy provision covering business losses when "access to" its premises is "specifically prohibited by order of a civil authority as the direct result" of "direct physical loss or direct physical damage" in "the immediate area." Nothing like that is alleged to have happened. The governmental orders were not issued because of property damage in the

"immediate area" of SA Hospitality's restaurants. Rather, they were issued to keep people apart to slow the spread of the virus.

Regardless, even if SA Hospitality had alleged "direct physical loss or physical damage" to its property, or to property in the immediate area, the policy contains an unambiguous virus exclusion stating: "We will not pay for loss or damage caused by or resulting from any virus . . . ." This is a straightforward and independent ground to dismiss.

SA Hospitality tries to argue around the virus exclusion by suggesting that *only* the government orders (not the virus) caused its losses, but this hairsplitting is inconsistent with the policy language, which refers expressly to the virus exclusion being triggered in connection with a civil authority order, and with New York law on causation.

Simply put, there is no coverage for SA Hospitality's claims. While the COVID-19 pandemic has impacted businesses in unprecedented ways, it cannot vitiate the terms of Hartford Fire's insurance contract to create coverage where none exists. The policy does not insure SA Hospitality's income loss unless that income loss is tied to a direct physical loss or damage to property at its premises or nearby—and never when the cause of loss is a virus.

For all of these reasons and others appearing in the record, Hartford Fire respectfully requests that the Court dismiss SA Hospitality's claims with prejudice. And because the named plaintiffs' claims fail as a matter of law, this putative class action should be dismissed entirely.[1]

---

[1] As raised in Hartford Fire's pre-motion conference letter (*see* ECF 19 at 3), this Court lacks personal jurisdiction and SA Hospitality lacks standing as to SA Hospitality's claims against Hartford Fire purportedly brought on behalf of nonresident class members. *See Bristol-Myers Squibb Co. v. Superior Court of Cal*., 137 S. Ct. 1773, 1781 (2017); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Hartford Fire expressly reserves and does not waive or forfeit all defenses, objections, and arguments regarding dismissal of the claims purportedly brought on behalf of a nationwide class for lack of standing or personal jurisdiction

## BACKGROUND FACTS

SA Hospitality Group, LLC is a holding company in the restaurant business, and it purchased property insurance from Hartford Fire for itself and for 17 of its subsidiaries that are also plaintiffs in this case. (ECF 1 ("Compl.") ¶¶ 11-28, 31 (identifying the policy); Ex. A[2] (the "Policy"), at HFIC00010 (listing insureds under the Policy).)  All of the plaintiffs have their principal places of business in New York. (Compl. ¶¶ 11-28.)

On March 20, 2020, Governor Cuomo issued an Executive Order directing non-essential businesses "to reduce the in-person workforce at any work locations by 100%" in order to mitigate "community contact transmission of COVID-19." Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020). SA Hospitality alleges that it operates restaurants (Compl. ¶ 11), and restaurants were deemed essential and allowed to stay open for take-out and delivery. (Ex. B at 2 (guidance from Empire State Development Corporation).) *See also* Executive Order, 9 NYCRR 8.202.6 (Mar. 18, 2020) (authorizing guidance). In addition, employees of non-essential businesses could visit their premises "temporarily" for routine functions, "so long as they w[ould] not be in contact with other people." (Ex. C, at 3 (Question 13).)

SA Hospitality filed an insurance claim relating to its alleged interruption of business, and, on April 8, 2020, Hartford Fire denied the claim. (Compl. ¶ 58.)

On April 24, 2020, SA Hospitality filed its Complaint here, seeking to represent a nationwide class of policyholders that "have suffered losses due to measures put in place by civil authorities to stop the spread of COVID-19" but that have been denied coverage. (*Id.* ¶¶ 70-21.)[3]

---

[2] Citations in the form "Ex. ___" refer to the exhibits to the accompanying declaration of Charles Michael, dated July 9, 2020.

[3] SA Hospitality originally sued two affiliates of Hartford Fire that did not issue the Policy, but has since voluntarily dismissed those defendants. (ECF 32.)

SA Hospitality is invoking three aspects of its insurance coverage:  Business Income, Extra Expense, and Civil Authority.

The Business Income and Extra Expense coverage is set forth under a single provision whereby Hartford agreed to "pay for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary interruption of your business operations during the Period of Restoration due to direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss" at SA Hospitality's premises. (*Id.* ¶¶ 49, 83-99 (Counts I and II seeking "Business Income" coverage), 115-29 (Counts V and VI seeking "Extra Expense" coverage); Policy at HFIC00079 § A.)

The term "Covered Cause of Loss" is defined to mean "direct physical loss or direct physical damage that occurs during the Policy period and in the Coverage Territory," except where excluded or limited. (Compl. ¶ 53; Policy at HFIC00086 § A.)

Under the Civil Authority provision, there is "Additional Coverage" for "the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area" of the premises. (Compl. ¶¶ 50, 100-114 (Counts III and IV seeking coverage under the Civil Authority provision); Policy at HFIC00065 § A.2.a)

SA Hospitality's Complaint does not identify any particular property that was damaged or that suffered a physical loss. Nor does it contend that the virus was present at any of its premises or somehow caused physical damage. In fact, SA Hospitality concedes that the virus remains viable on surfaces for at most a few days. (Compl. ¶ 40.) Its theory of physical loss is instead based on the loss of "use" of the premises:  "Plaintiffs and all similarly situated Class

members have suffered a direct physical loss of and damage to their property because they have been unable to use their property for its intended purpose." (*Id*. ¶ 56.)

Moreover, SA Hospitality acknowledges that there is a virus exclusion in the Policy. That exclusion states that "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id*. ¶ 55; Policy at HFIC00053 § B.) SA Hospitality argues that the virus exclusion is inapplicable, however, because the cause of its loss was allegedly the government mandate to reduce its workforce, as distinct from the virus. (Compl. ¶ 57.)

The parties exchanged pre-motion letters in anticipation of this motion, and the Court authorized Hartford Fire to move to dismiss. (ECF 19, 27, 28.)

## DISCUSSION

I. **GOVERNING STANDARDS**

A. **Standard for a Motion to Dismiss**

The Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

For purposes of a motion to dismiss, the Court may consider not only the complaint itself, but also "any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Under this rule, courts commonly consider insurance policies in deciding motions to dismiss cases arising from those policies. *See*, *e.g.*, *No Hero Enters. B.V. v. Loretta Howard Gallery Inc.*, 20 F. Supp. 3d 421, 423 n.1 (S.D.N.Y. 2014) (Woods, J.). Here, SA Hospitality invokes and liberally quotes the Policy (*see*, *e.g.*, Compl. ¶¶ 31, 49-55); hence it is appropriate for the Court to consider the Policy in ruling on this motion.

### B.      Insurance Contracts Are Enforced as Written

Under New York law, which concededly governs here (*see* ECF 24, at 1 (pre-motion letter)), the party seeking insurance coverage "bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Group Inc. v. New England Ins. Co*., 225 F.3d 270, 276 (2d Cir. 2000). For purposes of policy exclusions, however, it is the insurance company which bears the burden of "establishing that the exclusions or exemptions apply in the particular case." *Seaboard Sur. Co. v. Gillette Co*., 476 N.E.2d 272, 275 (1984).

In evaluating whether these burdens have been met, courts apply the familiar standards to contracts generally. That is, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Village of Sylvan Beach v. Travelers Indem. Co.,* 55 F.3d 114, 115 (2d Cir. 1995); *see also Catucci v. Greenwich Ins. Co*., 830 N.Y.S.2d 281, 282 (2d Dep't 2007) (a policy exclusion that is "unambiguous" should be "accorded its plain and ordinary meaning" and enforced as written).

The enforcement of the plain meaning of contract language is essential to the functioning of the insurance industry. Insurers are in the business of pricing risk, and that would not be possible if courts could arbitrarily bind an insurer to "a risk that it did not contemplate and for which it has not been paid." *Dae Assocs., LLC v. AXA Art Ins. Corp.*, 70 N.Y.S.3d 500, 501 (1st Dep't 2018) (citation omitted). For the same reason, a court should "not make or vary the

contract of insurance to accomplish its notions of abstract justice or moral obligation." *Keyspan Gas East Corp. v Munich Reinsurance Am*., *Inc.*, 96 N.E.3d 209, 216 (N.Y. 2019).

## II.   SA HOSPITALITY HAS NOT ALLEGED DIRECT PHYSICAL LOSS

SA Hospitality has failed to allege facts to trigger coverage for multiple, independent reasons, discussed below.

### A.   SA Hospitality's Closure Was Caused by the Pandemic, Not By Property Damage At Its Premises

To trigger Business Income and Extra Expense coverage, SA Hospitality's suspension of operations must have been "***due to*** direct physical loss of or direct physical damage to property" at its covered premises. (Compl. ¶ 49; Policy at HFIC00079 § A (emphasis added)). This is not what SA Hospitality alleges. Rather, SA Hospitality alleges that its restaurants were closed because of government orders that were, in turn, "put in place . . . to stop the spread of COVID-19 among the population." (Compl. ¶ 6.)

None of this has anything to do with any physical property loss or damage at SA Hospitality's premises. In fact, the Complaint does not identify any particular property that was lost or damaged, relying instead on the allegation that SA Hospitality has "been unable to use [its] property for its intended purpose." (*Id*. ¶ 56; *see also id*. ¶ 68 ("loss or damage to property . . . includes the loss of use and occupancy").)  SA Hospitality's Complaint explicitly states that its alleged damages were incurred "***not*** because coronavirus was found in or on Plaintiffs' insured property" but instead because of the "precautionary" government orders. (*Id.* ¶ 57.)

Judge Caproni recently denied a preliminary injunction sought by a magazine business that was likewise impacted by COVID-19. The magazine relied upon substantially identical policy language and substantially similar arguments to what SA Hospitality advances here. Judge Caproni concluded that "New York law is clear that this kind of business interruption [claim]

needs some damage to the property" before there is coverage. *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, 1:20-cv-03311-VEC, ECF No. 24-1, at 15 (S.D.N.Y. May 14, 2020) (transcript) (copy attached as Ex. D). Restricted *access* to the property from government orders without any property damage to the insured or nearby property was not enough. *Id.*;[4] *see also Gavrilides Mgmt. Co. et al. v. Michigan Ins. Co.*, Case No. 20-258-CB-C30 (Mich. Circuit Court, Ingham Cnty. July 1, 2020) (summary disposition holding that COVID-19 government workforce reduction orders do not amount to direct property loss) (written ruling forthcoming; bench ruling available at https://tinyurl.com/yd4ykxce).

In its pre-motion letter, SA Hospitality tried to distinguish *Social Life* by arguing that the plaintiff there was advancing a different argument, about "physical contamination" at the premises, as opposed to the "loss of use" theory here. (ECF 27, at 2.)  Not so. The plaintiff in *Social Life* argued "that direct physical loss arises when property is rendered unusable," just as SA Hospitality is arguing. (Ex. E at 14-16 (Memorandum of Law); *see also* Ex. D at 5 (argument at hearing that coverage "includes loss of use and not just, you know, something where you take a hammer and break an item").) Judge Caproni found that insufficient. (Ex. D at 15.)

Judge Caproni's ruling was based on the leading New York case addressing this language, *Roundabout Theatre Co. v. Contin. Cas. Co.*, 751 N.Y.S.2d 4 (1st Dep't 2002). There, the scaffolding of a midtown building collapsed, causing New York City to order the closure of certain surrounding blocks. A Broadway theater which was not itself damaged "became inaccessible to the public and . . . was forced to cancel 35 performances of *Cabaret*." *Id.* at 5.

The trial court had interpreted the coverage language—"direct physical loss or damage to the property"—expansively to include "loss of use" of the property. *Id.* at 6. But the First

---

[4] Judge Caproni ruled from the bench, and the plaintiff voluntarily dismissed the case before a written opinion was issued.

Department reversed, finding that the trial court had "completely ignore[d]" the policy's plain language, which was "limited to losses involving physical damage to the insured's property." *Id.* at 8. As the First Department explained: "The plain meaning of the words 'direct' and 'physical' narrow the scope of coverage and mandate the conclusion that losses resulting from off-site property damage do not constitute covered perils under the policy." *Id.* at 7.

Here, SA Hospitality is relying on *exactly* the loss-of-use argument that was squarely rejected in *Roundabout*: "Plaintiffs and all similarly situated Class members have suffered a direct physical loss of and damage to their property because they have been *unable to use their property* for its intended purpose." (Compl. ¶ 56 (emphasis added).)

In its pre-motion letter, SA Hospitality tried to distinguish *Roundabout* by pointing out that the theater in *Roundabout* had also sued its insurance broker for failing to get proper coverage. (ECF 27, at 2.) But that was in a separate case that was settled, and had nothing to do with the relevant discussion of "direct physical loss." 751 N.Y.S.2d at 6. SA Hospitality also argues that the First Department relied on an exclusion for "War Risk and Governmental Authority and Civil Commotion" (ECF 27, at 2), but that is both irrelevant—since no such exclusion is at issue here—and wrong. The First Department held it was "unnecessary . . . to rule" on the exclusion since there was no coverage in the first place. 751 N.Y.S.2d at 10.

The *Roundabout* case is exactly on point. And it is binding in federal court, because there is no "persuasive evidence that the New York Court of Appeals . . . would reach a different conclusion." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999).

*Roundabout* was applied by Judge Engelmayer in another highly instructive case, *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014). In *Newman Myers*, power was preemptively shut off to certain areas of New

York because of Hurricane Sandy, and Judge Engelmayer concluded that language about direct physical loss or physical damage did not cover a law firm that could not access its offices.

After summarizing the *Roundabout* case, Judge Engelmayer explained:  "The critical policy language here—'direct physical loss or damage'—similarly, and unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Id.* at 331. He continued: "The words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Id.*

The application of *Roundabout* and *Newman Myers* to the facts here is straightforward. SA Hospitality has not alleged that the virus actually contaminated its property, or that it was forced to close because of any particular damage to its property. Instead, just like the theater in *Roundabout* and the law firm in *Newman Myers*, SA Hospitality's real grievance is that it lost the *use* of its premises because of an issue that was "exogenous to the premises themselves,"  17 F. Supp. 3d at 331—namely, the governmental orders and the underlying imperative for people to stay distant from one another to control the spread of COVID-19. This does not amount to direct physical loss or damage.

Finally, this conclusion finds confirmation in Policy language stating that the coverage would extend through a "period of restoration," which ends when the property at the premises "should be *repaired, rebuilt or replaced* with reasonable speed and similar quality." (Compl. ¶ 93; Policy at HFIC00079 § A; *id.* at HFIC00080 § A.5.a.(2)(a) (emphasis added).) Citing this same language, Judge Engelmayer in *Newman Myers* explained:  "The words 'repair' and 'replace' contemplate physical damage to the insured premises as opposed to loss of use of it."

17 F. Supp. 3d at 332. This is exactly right. Here, the "loss of use" argument in the Complaint cannot be squared with the contract language about the property being "repaired, rebuilt or replaced." There is no property in need of repair, meaning there is no property with "physical damage—and hence there is no coverage.

### B.   SA Hospitality Relies on Easily Distinguishable Cases From Outside New York

During the pre-motion conference, SA Hospitality relied upon out-of-state cases that are not binding but are in all events easily distinguishable:

- In *Gregory Packaging, Inc. v. Travelers Property Cas. Co*., No. 2:12-cv-04418, 2014 WL 6675934, at *3-4 (D.N.J. Nov. 25, 2014), the release of ammonia rendered a packaging facility "physically unfit for normal human occupancy," and the court ruled that this amounted to "direct physical loss or damage."

- In *Murray v. State Farm Fire and Casualty Co*., 509 S.E.2d 1, 17 (W. Va. 1998), boulders fell from a cliff and landed nearby to—but did not strike—the plaintiffs' homes. But, given the risk that "rocks and boulders could come crashing down at any time," rendering the homes "unsafe for habitation," the court found there were questions of fact as to whether this amounted to "direct physical loss." *Id*.[5]

These cases are from outside New York and are inconsistent with how New York courts have interpreted the plain meaning of the key policy language about "direct physical loss of or physical damage to property," discussed above.

Regardless, they are easily distinguishable. As Judge Engelmayer explained in addressing similar cases: "Whether or not these cases were each correctly decided, each involved. . . a

---

[5] SA Hospitality also cited *Wakefern Food Corp. v. Liberty Mutual Fire Insurance Co*., 968 A.2d 724, 734 (N.J. Super. Ct. App. Div. 2009), but that case *did* involve tangible "physical" damage. The *Wakefern* court found there was a fact question as to whether an "electrical grid was 'physically damaged'" where, "due to a physical incident or series of incidents, the grid and its component generators and transmission lines were physically incapable of performing their essential function of providing electricity." *Id*. To be sure, the *Wakefern* decision includes language seemingly equating "the temporary loss of use" with "physical damage," *id* at 737—but that is *exactly* what binding New York law rejects. *See Roundabout*, 751 N.Y.S.2d at 6 (trial court erred in concluding that direct physical loss "encompasses a 'loss of use' of the property").

physical change for the worse in the premises . . . or a newly discovered risk to its physical integrity." *Newman Myers*, 17 F. Supp. 3d at 330. This is quite a different scenario from "forced closure of the premises for reasons exogenous to the premises themselves." *Id*.

Here, unlike *Gregory Packaging* or *Murray*, SA Hospitality has not alleged its premises are uninhabitable because of any physical change to the premises. There is no allegation that the virus causing COVID-19 ever was on the premises, nor that its losses were related to any physical loss, physical damage, or other condition on the premises whatsoever.

SA Hospitality has not alleged any direct physical loss or damage to its property. New York law rejects the "loss of use" theory upon which SA Hospitality relies. SA Hospitality, therefore, fails to allege sufficient facts for Business Income and Extra Expense, and Counts I, II, V and VI should be dismissed.

## III.   SA HOSPITALITY HAS NOT ALLEGED FACTS TO TRIGGER "ADDITIONAL COVERAGE" UNDER THE CIVIL AUTHORITY CLAUSE

Under the Civil Authority provision, SA Hospitality must allege facts to show that it lost income because:

- "access" to its premises was "specifically prohibited by order of a civil authority"; and

- that the order from a civil authority was "the direct result" of "direct physical loss or direct physical damage" to "property in the immediate area."

(Compl. ¶¶ 50, 52; Policy at HFIC00065 § A.2.a, HFIC00086 § A.) SA Hospitality has not alleged facts that would trigger coverage under these requirements.

First, SA Hospitality has not alleged there was any "direct physical loss" for all the reason discussed above, either at its own premises or in the immediate area.

Second, the Complaint nowhere alleges that access to SA Hospitality's premises is "specifically prohibited." The SA Hospitality plaintiffs are in the restaurant business (Compl.

¶ 11), and thus *were* allowed to operate take-out and delivery services. (Ex. B at 2.) And businesses in all sectors were allowed access for routine functions, so long as the visitors were not "in contact with other people." (Ex. C at 3 (Question 13).)

Cases across the country recognize that policy language concerning "prohibited" access is not triggered where a policyholder's premises is only rendered less accessible. *See, e.g.*, *S. Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1139-41 (10th Cir. 2004) (grounding of flights after September 11th made it more difficult for customers to access plaintiff's hotels but did not "prohibit access"); *St. Paul Mercury Ins. Co. v. Magnolia Lady, Inc.*, No. 2:97-cv-153 BB, 1999 WL 33537191, at *3 (N.D. Miss. Nov. 4, 1999) (civil authority coverage not triggered by bridge closure that reduced casino-hotel's business by 80% but did not completely cut off access); *Syufy Enters. v. Home Ins. Co. of Ind.*, No. 94-0756 FMS, 1995 WL 129229, at *2 (N.D. Cal. Mar. 21, 1995) (curfews imposed during period of civil unrest did not specifically prohibit access to the policyholders' movie theaters).[6]

Third, even if access were considered "prohibited," that was not the "direct result" of damage to "property in the immediate area." There is no allegation here about damaged property in or around the SA Hospitality restaurants. The access restrictions are concededly about keeping people distant from one another, so as "to prevent the spread of COVID-19." (Compl. ¶ 57.)

Courts routinely reject civil authority claims where orders of civil authority are aimed at fear of future harm, not existing property loss or damage. The Second Circuit's decision in

---

[6] The Complaint refers to government orders nationwide (Compl. ¶ 45), but the only ones relevant here are those in New York, where SA Hospitality is located. (*Id*. ¶¶ 11-28). This is so despite SA Hospitality bringing the case as a putative class action, because SA Hospitality cannot state a claim based on the circumstances of absent class members. Rather, it "is axiomatic that a putative class representative must be able to individually state a claim against defendants, even though he or she purports to act on behalf of a class." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003).

*United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128 (2d Cir. 2006) is instructive.

There, United Air Lines sought recovery for losses caused by the temporary shutdown of Reagan

Washington National Airport following the September 11, 2001 terrorist attacks. United invoked

a similar clause, providing coverage where access "is prohibited by order of civil authority as a

direct result of damage to adjacent premises." *Id*. at 129. According to United, the shutdown was

due to damage at the Pentagon nearby. The Second Circuit found there was no coverage because

the government's "decision to halt operations at the Airport indefinitely was based on fears of

future attacks," not about the fact that the Pentagon was damaged. *Id*. at 134.

Just as in *United,* the "order of a civil authority" at issue here has everything to do with

protecting human life by controlling when and how people assemble in particular places, and

nothing to do with any damaged property. No damaged property is identified in the Complaint.

The Court should follow *United* and conclude that SA Hospitality has not alleged facts that

would trigger coverage under the Civil Authority Clause. *See also*, *e.g*., *Paradies Shops, Inc. v.

Hartford Fire Ins. Co*., No. 1:03-cv-3154-JEC, 2004 WL 5704715, at *1-2, *6 (N.D. Ga. Dec.

15, 2004) (holding that there was no coverage in part because the FAA's order that grounded

planes after September 11th was not a "direct result" of property damage); *S. Tex. Med. Clinics,

P.A. v. CNA Fin. Corp*., No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008)

(evacuation of county before hurricane making landfall was "due to" fear of future damage rather

than existing damage). Counts III and IV, therefore, should be dismissed, too.

## IV.     THE VIRUS EXCLUSION IS AN INDEPENDENT GROUND TO DISMISS

Even if SA Hospitality had alleged facts falling within the relevant coverage language of

the Policy (it did not), the claims still fail. All of SA Hospitality's losses are caused by a virus,

and the Policy expressly excludes losses caused by a virus.

### A.    <u>The Court Should Enforce the Unambiguous Virus Exclusion</u>

The Policy includes a straightforward virus exclusion: "We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (Compl. ¶ 55; Policy at HFIC00053 § B.)  SA Hospitality's allegations fall squarely within that language.

The Complaint refers throughout to the "novel virus, SARS-CoV-2" responsible for the COVID-19 disease, with symptoms ranging from "fever" and "cough" to "severe respiratory failure." (Compl. ¶¶ 34, 36.) Thus, in the words of the Policy, this case involves a "virus" that "is capable of inducing physical distress, illness or disease." (*Id*. ¶ 55; Policy at HFIC00053 § B.) And equally clear is that SA Hospitality's loss was "caused by or result[ed] from" that virus. (*Id*.) The Complaint repeatedly draws a causal connection between the two:

- SA Hospitality alleges that "[n]o insurer intends to cover any ***losses caused by the COVID-19 pandemic***." (Compl. ¶ 60 (emphasis added).)

- SA Hospitality alleges that Hartford Fire is among the insurance companies that have breached "their obligation to provide coverage for business ***losses due to the COVID-19 pandemic***." (*Id*. ¶ 68 (emphasis added).)

- An entire section of the Complaint is under the heading: "***The COVID-19 Pandemic has Affected Policyholders*** Nationwide." (*Id*. at pg. 17 (emphasis added).)

- SA Hospitality alleges that "***COVID-19 is physically impacting*** private commercial property in New York and throughout the United States, threatening the survival of thousands of restaurants, retail establishments, and other businesses . . . ." (*Id*. ¶ 59 (emphasis added).)

These are all different ways of saying what is obvious from the face of the Complaint: the alleged losses were "caused by or result[ed] from" the virus.

New York courts have not hesitated to enforce, as a matter of law, similar exclusions where the language is unambiguous, and this Court should do so here. *See*, *e.g*., *Cleary v. Automobile Ins. Co. of Hartford*, 35 N.Y.S.3d 238, 239 (2d Dep't 2016) (granting judgment to

insurer where mold exclusion was "unambiguous" and the "claimed losses fell within the mold

exclusion clause"); *McLean v. Continental Cas. Co*., 951 F. Supp. 494, 498 (S.D.N.Y. 1997)

(enforcing "infection" exclusion in accidental death policy because the circumstances of the

death fell "squarely within the ordinary meaning of the term 'infection'").[7]

And, just last week, a Court in Michigan ruled from the bench that a nearly identical virus

exclusion would bar coverage for COVID-19 business income claims, even if the policyholder

had been able to demonstrate direct physical loss (which it could not). *See Gavrilides Mgmt Co.*

*LLC et al v. Michigan Ins. Co.*, No. 20-258-CV-C30 (written ruling forthcoming; bench ruling

available at https://tinyurl.com/yd4ykxce).

Simply put, a plain application of the virus exclusion bars coverage here.

**B.     The Governmental Workforce Reduction Orders
         Do Not Take This Case Outside the Virus Exclusion**

SA Hospitality nonetheless attempts to avoid the virus exclusion by arguing that *only* the

governmental orders (and not the virus) should be considered the "efficient proximate cause" of

its loss. (Compl. ¶ 57.) This is wrong on multiple grounds, detailed below.

**1.     The Language of the Virus Exclusion Expressly Contemplates that It
         Would Be Triggered in Connection with the Civil Authority Clause**

SA Hospitality's attempt to artificially isolate the government orders as the sole "efficient

proximate cause" of its losses is flatly inconsistent with the the plain language of the virus

exclusion itself. That language contemplates *exactly* the causal sequence that SA Hospitality tries

---

[7] Courts elsewhere are in accord. *See*, *e.g.*, *Certain Underwriters at Lloyds of London v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014) (enforcing microorganism exclusion); *Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*, 105 F. Supp. 3d 464 (E.D. Pa. 2015) (enforcing exclusion for fungi, bacteria and virus against claims for bacterial infections resulting from certain surgeries); *Lambi v. Am. Mut. Ins. Co.*, No. 4:11-cv-906, 2012 WL 2049915, at *4-5 (W.D. Mo. June 6, 2012) (communicable disease exclusion in homeowners' policy barred insurance coverage for virus claims), *aff'd*, 498 F. App'x 655 (8th Cir. 2013).

to argue falls outside the exclusion—namely, that a virus would cause a civil authority to act, creating a loss: "The exclusion set forth in Paragraph B [the virus exclusion] applies to all coverage under . . . forms or endorsements that cover . . . *action of civil authority*." (Policy at HFIC00053 § A (emphasis added).) This shows that the drafters contemplated that the virus exclusion would apply in connection with the "action of civil authority," which is the circumstance here.

If SA Hospitality's reading of the policy were adopted—that is, if the action of a civil authority would supersede the virus as the sole "efficient proximate cause" of loss—the language quoted above would be rendered meaningless, in violation of the cardinal principle "that an insurance policy cannot be construed so as to render its terms meaningless or of no effect." *Sirignano v. Chicago Ins. Co*., 192 F. Supp. 2d 199, 204-05 (S.D.N.Y. 2002).

## 2. A Governmental Workforce Reduction Order Is Not a Covered Cause of Loss

A separate and equally as significant problem with SA Hospitality's "efficient proximate cause" argument is that it is based on a false premise—namely, that a government order closing businesses could even be a covered cause of loss (or a covered "peril" in insurance parlance) in the first place.

Under New York law, where a "plaintiff is suing for coverage under a policy for damages caused by two perils, one which is covered under the policy and the other is not," there is coverage if the "efficient, proximate" cause of the loss (a term discussed more fully below, *see* § IV.B.4) is a peril that is covered. *Hit Factory, Inc. v. Royal Ins. Co. of Am*., 02 Civ. 4068, 2005 WL 2125803, at *5 (S.D.N.Y. Aug. 26, 2005). This doctrine would govern where, for example, a fire in one building leads to an explosion of dynamite stored in an adjoining building, damaging a nearby marine vessel with insurance only for losses by fire (but not an explosion). *Bird v. St.*

*Paul Fire & Marine Ins. Co*., 120 N.E. 86, 87 (N.Y. 1918) (Cardozo, J.). The court would have to determine whether the loss was more properly characterized as caused by the covered peril (the fire) or the uncovered one (the explosion).

As SA Hospitality states in its pre-motion letter, the efficient proximate cause doctrine "comes into play" only in this type of scenario, when there is a "loss caused by ***both*** a covered peril ***and*** an excluded peril." (ECF 27, at 1 (emphasis in original).) *See also* 7 Steven Plitt, et al., Couch on Insurance § 101:55 (3d ed. 1995) (doctrine applies only in "cases involving multiple causes that produce a loss, one of which is included while the other is excluded from policy coverage"). But here there is only *one* peril, the virus, which is excluded.

The other alleged peril, New York's workforce reduction by government order, is not a covered peril at all. A governmental order is not a "Covered Cause of Loss" under the Policy, nor can it even be considered a peril distinct from the virus that led to the government orders.

A federal district court in Florida addressed this same issue, and rejected a similar attempt to characterize an order of civil authority, by itself, as a covered peril separate from the cause of the order. *See Prime Alliance Group, Ltd. v. Hartford Fire Ins. Co*., No. 06-22535, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007). There, owners of a beach club suffered losses when the Miami area was ordered to evacuate in anticipation of Hurricane Francis. *Id*. at *1. The losses did not exceed the policy's deductible for a "windstorm" but did exceed the "standard" deductible. *Id.* at *1-2. Thus, a key issue for the court was whether the cause of loss was a "windstorm" or a different peril.

The beach club owners argued that "their business interruption losses were caused not by a windstorm but by an order of civil authority, a separate peril." *Id.* at *3. The court rejected that argument, because, under the policy, "perils are natural events like floods and earthquakes that

carry with them an inherent risk of direct physical loss to the insured." *Id*. at \*4. By this definition, an "order of civil authority cannot in any reasonable manner be construed as a 'peril.'" *Id*.[8] This analysis is exactly on point here. There is only one true peril alleged—the virus—and so the efficient proximate cause doctrine does not come into play.

Here, as in *Prime Alliance*, the entire structure and wording of the Policy makes clear that a civil authority order is not a peril or a Covered Cause of Loss, but instead is an "Additional Coverage" provided in certain well-defined and limited circumstances. The term "Covered Cause of Loss" means "direct physical loss or direct physical damage that occurs during the Policy period and in the Coverage Territory." (Compl. ¶ 53; Policy at HFIC00086 § A.)  The government orders by themselves cannot plausibly fall within this definition because they do not constitute "direct physical loss or direct physical damage." Rather, as the Complaint alleges, the orders are "precautionary" measures taken "to prevent the spread of COVID-19 in the future." (Compl. ¶ 57.)

The Civil Authority provision is set forth as an "***Additional*** Coverage" precisely because a civil authority's order, standing alone, would not otherwise amount to a Covered Cause of Loss triggering coverage. The "Additional Coverage" applies only "when access to" SA Hospitality's scheduled premises "is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of" SA Hospitality's premises. (Compl. ¶¶ 50, 52; Policy at HFIC00065 § A.2.a .) That is, the Civil Authority provision applies when there is direct physical loss or damage to property ***other than SA Hospitality's property***. Nothing in the Policy, however, suggests that this limited additional coverage changes the scope of the

---

[8] Because there is a single peril at issue—the virus—it does not matter that the Virus Exclusion lacks specific language, used in other exclusions, stating that the excluded cause will trigger the exclusion, "regardless of any other cause or event that contributes concurrently." (Policy at HIFC00086 § B.1.) There is no "concurrent" cause to consider here.

definition of "Covered Cause of Loss". For example, nothing in the Civil Authority provision mentions, much less changes, the requirement that a Covered Cause of Loss must be "direct physical loss or direct physical damage."

To the contrary, the Civil Authority provision makes clear that an insured must still demonstrate a Covered Cause of Loss to recover. What triggers the Civil Authority Clause is an order of civil authority that prohibits access to the insured premises "*as the direct result of a Covered Cause of Loss* to property in the immediate area" of the premises. (Compl. ¶¶ 50; Policy at HFIC00065 § A.2.a (emphasis added).) This language demonstrates that the coverage analysis under the Civil Authority clause requires considering what peril "result[ed]" in the civil authority orders being issued in the first place. SA Hospitality cannot artificially separate the civil authority orders at hand from their underlying cause because it is the underlying cause—here, the virus—that determines coverage. It makes no sense to refer to a civil authority order as a separate peril when that coverage turns on the underlying cause. And because the government orders were caused by the virus, there is only one possible peril here—the virus—not two.

SA Hospitality's argument is not only inconsistent with the plain wording of the policy, but it would run counter to the basic principle in New York law that an "insurance contract should not be read so that some provisions are rendered meaningless." *County of Columbia v. Continental Ins. Co.*, 634 N.E.2d 946, 950 (N.Y. 1994). Treating a governmental order as a Covered Cause of Loss would render the "Additional Coverage" for "Civil Authority" superfluous. It would also eliminate the requirement that "Business Income" coverage be premised on direct physical loss.  Indeed, if a governmental order were a Covered Cause of Loss, there would be no need for an "***Additional*** Coverage" for "Civil Authority"; it would already exist under the Business Income coverage.

Simply put, a civil authority order "cannot in any reasonable manner" be construed as a Covered Cause of Loss under the plain terms of the Policy. *See Prime Alliance*, 2007 WL 9703576, at *4. Thus, there is only one peril that has led to SA Hospitality's loss—the coronavirus—and it is excluded.

### 3. The Broad Phrasing "Caused By or Resulting From" Goes Beyond Efficient Proximate Cause

Another reason to reject SA Hospitality's reliance on the efficient proximate cause doctrine is that the doctrine applies only where a contract "excludes damage '*caused by*'" a specified event. The New York Court of Appeals has held that the language used here— "caused by *or resulting from*"—has a "broader" meaning. *Album Realty Corp. v. Am. Home Assur.*, 607 N.E.2d 804, 805 (N.Y. 1992) (citation omitted). *Id.* (emphasis added). Specifically, the phrase "resulting from" merely "requires some causal relation or connection," which is why it is considered "more comprehensive" than "proximate cause." 7 Steve Plitt, et al., Couch on Insurance § 101:52 (3d ed. 1995); *see also* 2 Allan D. Windt, Insurance Claims & Disputes § 6:2 (6th ed. 2020) (an exclusion for "injuries 'caused by' a particular event should be applied more narrowly than an exclusion that is written to apply to injuries 'resulting from'" an event).

In the *Album Realty* case, a sprinkler head froze and ruptured, flooding the policyholder's home, and the Court of Appeals faced the question of whether the loss fell within an exclusion for "damage 'caused by' freezing" or was covered as water damage. 607 N.E.2d at 805. The Court of Appeals, applying the efficient proximate cause standards under New York law, held that a "reasonable business person would conclude in this case that plaintiff's loss was caused by water damage and would look no further." *Id.*

Importantly, the Court of Appeals contrasted the key phrase in the freezing exclusion— "caused by"—with the policy's "other exclusionary clauses, all of which use broader language,

*i.e.*, 'caused by or resulting from . . . . " *Id.* at 805. The "broader" language is what is before the Court in this case, and why the Court should not be constrained by the doctrine of efficient proximate cause that SA Hospitality is advancing. *See also Loretto-Utica Properties Corp. v. Douglas Co.*, 630 N.Y.S.2d 917, 919 (N.Y. Sup. Ct. 1995) ("The Court finds that the preamble in these clauses of '(W)e do not insure against 'loss' caused by or resulting from . . . ' to be of significant import. Such language serves to broaden the intent and scope of the exclusion wording rather than narrow it."); *accord Maroney v. New York Cent. Mut. Fire Ins. Co.*, 839 N.E.2d 886, 889 (N.Y. 2005) (holding, in the context of an insurance contract, that the "words 'arising out of' have 'broader significance . . . .and are ordinarily understood to mean originating from, incident to, or having connection with . . . .'") (citation omitted).

In plain English, the suspension of SA Hospitality's business was at least a "result from"—that is, there is at least some causal connection to—the virus. As discussed above, SA Hospitality's own Complaint refers to "losses caused by the COVID-19 pandemic" (Compl. ¶ 60), refers to "losses due to the COVID-19 pandemic" (*id.* ¶ 68), and states that the "COVID-19 pandemic has affected policyholders" (*id.* at 17 (capitalization removed).)  And, of course, the suspension of non-essential businesses was expressly premised on the COVID-19 pandemic. *See* Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020). The causal connection is straightforward and obvious, and so the virus exclusion should be enforced as written.

### 4.   The Virus Was In All Events the Efficient Proximate Cause of SA Hospitality's Alleged Losses

Finally, even if the efficient proximate cause doctrine applied, it would not help SA Hospitality.

The doctrine holds that when assessing "cause" in insurance contracts, courts should "follow the chain of causation so far, and so far only, as the parties" contemplated. *Album*, 607

N.E.2d at 805. Accordingly, the focus is on a "commonsense" evaluation of what the parties would "think of as a cause" of the loss. *Bird*, 120 N.E. at 87. This is typically the "cause that originally sets other events in motion," as to opposed to an "event that merely sets the stage for a later event." *Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co*., 472 F.3d 33, 48 (2d Cir. 2006) (alterations and citations omitted).

Here, it was the virus that directly set in motion the government orders, as SA Hospitality concedes. (Compl. ¶ 57 (orders were intended "to prevent the spread of COVID 19").) *See also* Executive Order, 9 NYCRR 8.202.8 (Mar. 20, 2020) (order based on "the COVID-19 emergency disaster"). The governmental orders cannot be artificially cleaved off from the underlying virus that is their focus. Nor can the COVID-19 pandemic be characterized as merely "setting the stage" for the government to order the economy largely closed, *Parks*, 472 F.2d at 48, because the pandemic is precisely what led to those orders.

The *Prime Alliance* case discussed above illustrates this point, as well. There, the Miami beach club owners tried to argue that a civil authority evacuation order in anticipation of Hurricane Frances was the efficient, proximate cause of their loss—and not a "windstorm," which would have triggered a higher deductible. 2007 WL 9703576, at *5. The court concluded that the efficient proximate cause doctrine was inapplicable, but found that applying the doctrine would lead to the same result: "[T]he windstorm set in motion the order of civil authority, which in turn gave rise to the business interruption losses, making the windstorm the efficient proximate cause of Plaintiffs' losses." *Id.*  So too here. The virus set in motion the civil authority orders, making the virus—an excluded cause—the efficient proximate cause of any resulting alleged losses. *See also*, *e.g.*, *Siegel v. Chubb Corp*, 825 N.Y.S.2d 441, 442 (1st Dep't 2006)

(applying mold exclusion and rejecting argument that "efficient proximate cause" was the toxins released by the mold).

## CONCLUSION

For the foregoing reasons and others appearing on the record, the Court should dismiss SA Hospitality's Complaint in its entirety with prejudice.

Dated: July 9, 2020                                      Respectfully submitted,

STEPTOE & JOHNSON LLP

By:   _/s/ Sarah D. Gordon_

Charles Michael                              Sarah D. Gordon*
Meghan Newcomer                        1330 Connecticut Avenue, NW
1114 Avenue of the Americas        Washington, D.C. 20036
New York, New York 10036          (202) 429-3000
(212) 506-3900                              sgordon@steptoe.com
cmichael@steptoe.com                  *admitted _pro hac vice_
mnewcomer@steptoe.com

_Counsel for Hartford Fire Insurance Company_